Williams, J.,
' The plaintiff’s right of recovery was based upon the alleged fraud in the sale and assignment of the lease, and the defendants’ obligation guaranteeing its validity and operative effect; and the part of the charge held by the circuit court to be erroneous, is that by which the jury were instructed that if they- should find, on either ground, for the plaintiff, he was entitled to recover the amount paid for the lease, with interest.
It cannot be doubted that if the plaintiff was induced by the fraud of the defendants to purchase and pay for .the lease, and it proved to be without force, and of no value, he should recover, at least, the money obtained from him by the fraud, with interest; so that, the practical question here, is what, in the absence of fraud, was the proper measure of recovery for the breach of defendants’ contract of guaranty? The ease is argued here, in support of the judgment of the circuit court,' upon the theory that the plaintiff’s action, in so far as it was founded on that contract, is in the nature of an action for the breach of a covenant against incumbrances, and, consequently, the amount of his recovery should have been limited to the cost of getting in the outstanding incumbrance, which the lease of Detwiler & Co. is claimed to have been, and nothing more; and this is probably the view adopted by the circuit court; while the court of common pleas treated the action as analogous to those for the breach of a covenant of seizin or title. *68 Upon the former of these theories, it was undoubtedly competent to prove what sum the plaintiff was compelled to pay for the discharge of the incumbrance, treating the Detwiler lease as such, but the proof should properly have come from the plaintiff, for in its absence, the damages could only be nominal; and it is therefore not apparent how the defendants could have been prejudiced by the refusal to permit them to supply evidence essential to the plaintiff’s recovery of substantial damages, which he had omitted to furnish. But the question whether the defendants ’ contract of guaranty, with respect to the measure of damages recoverable for its breach, may properly be classed with covenants of seizin, is fairly made on the charge of the court, and its consideration becomes necessary in the decision of the case. A covenant of seizin is defined to be “an assurance to the purchaser that the grantor has the very estate in quantity and quality which he purports to convey, ” and extends not only to the land itself, but also to whatever is properly appurtenant to, and will pass by the conveyance of the land; and, though the covenant is usually found in conveyances of the fee, it is appropriate in leases and assignments of them. Indeed, it seems well settled, that in leases, the covenant, or its equivalent will be implied, unless the terms of the lease exclude the implication. It is said in Rawle on Covenants for Title, section 272- “With respect to estates less than freehold, covenants for title were from the earliest times implied, not only from the words of leasing, such as d&missi, concessi, or the like, but even from the relation of landlord and tenant, and such is the law at the present day, unless where, *69 as in some of the United States, it has been altered by legislation.” And in section 273, that author says: “The covenants for title thus implied from the words of leasing, were and are two; first, a covenant that the lessor has power to demise, and secondly a covenant for quiet enjoyment, and both of these covenants are, of course, as are all common law implied covenants, general or unlimited.”
It is held by some authorities, that no covenants are implied in the assignment of a lease.' Waldo v. Hall, 14 Mass., 486; Blair v. Rankin, 11 Mo., 442. Other authorities, however, maintain the contrary doctrine. Thus, in Souter v. Drake, 5 B. & Ad., 992-1002, it is said by Lord Denman, that “unless there be a stipulation to the contrary, there is, in every contract for the sale of a lease, an implied undertaking to make out the lessor’s title to demise, as well as that of the vendor to the lease itself, which implied undertaking is available at law as well as in equity.” This would seem to be the better rule, because, it can hardly be supposed to be the intention of one party to purchase, or of the other to sell the mere instrument of lease without any beneficial interest under it, but rather that the subject of the purchase and sale is the right to enjoy the term purported to be demised, and all the benefits which it stipulates to confer on the lessee. But it is not deemed necessary to determine here, what, if any obligation may be implied from the assignment of the lease. It is, of course, competent for the parties to introduce into the assignment any covenant or stipulation pertinent to the subject which they have agreed upon; and it is not unusual for the assignor to covenant that the indenture of lease is good, that he has power to assign, that he will save the as *70 signee harmless from former grants and incumbrances, and for quiet enjoyment. 2 Taylor on Landlord and Tenant, section 431. The instrument of guaranty executed by the defendants, and delivered to the plaintiff contemporaneously with the delivery of the assigned lease and the payment of the balance of its purchase price, was founded upon a sufficient consideration, and became a part of the contract of assignment. By it, the defendant stipulated that the lease was in full force and effect at the time of its assignment and delivery to the plaintiff, and guaranteed to him “the rights and title of said lease.” This amounts to an express covenant of the assignor’s title to the term demised, and for its quiet enjoyment by the assignee.
It has long been the law of this state, that a covenant of seizin is not broken so as to give the covenantee a right of action, if the covenantor had the actual seizin, though not the legal title, at the time of the conveyance, and the former is put in possession under it, until there has been an eviction under a paramount title. Stambaugh v. Smith, 23 Ohio St., 584, and cases there cited. And the same rule obtains in regard to a covenant for the quiet enjoyment of a lessee. Such eviction, however, may be constructive, as well as actual; as, where the covenantee has purchased, or taken a lease under, the paramount title, even without any actual change of possession, when the validity of such title has been established by the judgment of a court of competent jurisdiction, and, under certain circumstances, when it has not been so established. In opposition to this doctrine, it has often been urged, says Mr. Rawle, in his work on Covenants for Title, section 142, “that it confounds all distinctions between a covenant *71 for seizin and a covenant for quiet enjoyment or warranty; and it has also been argued that an analogy exists to the rule which prohibits a tenant from disputing his landlord’s title, unless there has been an actual eviction under the paramount claim. But, in answer to such analogy, it may be said, first, that whatever may have been the origin'of this rule, or its earlier application, it is now well settled that whenever the landlord’s title is insufficient for the security of the tenant, the relation between them may be renounced, and the latter may protect himself under the paramount title.” The only effect of the judgment establishing such title, is that it makes a prima facie case of paramount title if the covenantor is not a party, and is conclusive evidence thereof, if he is a party to the judgment; while, if, without it, the covenantee surrenders the possession", or buys in the superior title to protect his possession, he does so at his peril, and assumes the burden of proving such superior title to which he would have been compelled to yield. So, when a covenantee is unable to obtain possession in consequence of an existing-possession by a person claiming and holding under an elder title, that is equivalent to an eviction. Taylor on Landlord and Tenant, section 314. The evidence in the case before us was such that the jury might well have found, as is shown by the verdict, that the defendants had broken their covenants in the contract of assignment of the lease to the plaintiff. They were not in possession of the premises, nor did they put the plaintiff in possession; on the contrary, Detwiler & Co., had the actual possession and the lawful right thereto under their lease, and, moreover, the defendant’s lease, by the judgment of a court of competent ju *72 risdietion in an action to which they were parties, had been adjudged to be void, and all persons claiming under them had been enjoined by the judgment of the court from asserting any claim under it; so that, the plaintiff acquired nothing by the assignment of the lease to him. Under such circumstances there could be no valid objection to the purchase, by the plaintiff and Craig, of the Detwiler lease, if they chose to make it, for any price at which it could be obtained. That purchase was independent of the lease assigned by the defendants, and not analogous to the removal of an incumbrance in aid of the title, or to preserve a possession acquired under it. The plaintiff’s right of action against the defendants on their covenants was complete without such purchase, for they were broken as soon as made. He was under no obligation to delay, upon any expectation, however seemingly well grounded, that the Detwiler lease would be surrendered or forfeited, or otherwise extinguished; it was neither in the power of the plaintiff, or of the defendants, to terminate that lease for any violation of its conditions, or failure to perform them; that could only be done by the lessor for whose benefit they were inserted in the lease, and he might waive compliance with them or not, as he chose, and, certainly, as long as he permitted the lease to remain operative, no breach of its provisions could be available as a defense to the plaintiff’s action. The plaintiff was entitled to the immediate and peaceable possession of the premises, which the defendants covenanted he should have, and which they were unable to give him, and did not give him on account of the Detwiler lease and the judgment of the court sustaining it, and he was neither required to violate *73 the injunction, nor incur the consequences of a forcible entry upon the premises, but was at liberty to obey the law and seek his redress by action on the defendant’s covenants. Nor, was it essential to the plaintiff’s action that he reassign or tender back the void lease; the action did not proceed as one for rescission, but for the 'total failure of title to the thing sold. 2 Sutherland on Damages, 264, 265; Parker v. Brown, 15 N. H., 176. No title having been conveyed, there was nothing to reconvey. Whether a different rule should be applied in a case where the tenant has been ousted from a material part of the premises only, which he elects to treat as an eviction from the whole, and throws up the lease, instead of retaining, as he may, possession of so much of the property as he has not been deprived of and suing the landlord for such damages as he has sustained from the partial eviction, is a question not arising in this case. Nor, is it material to the defendant’s liability on their undertaking, that it should constitute a covenant running- with the land, as counsel for the defendants in error seem to suppose, because the covenant was made directly with the plaintiff and not with a prior owner from whom the plaintiff derives title by conveyance and where the grantee becomes a party to the covenant only by the conveyance of the estate.
The liability of the defendants on their covenants being established, the measure of the damages was not less than that authorized by the rule given in the charge to the jury. In McAlpin v. Woodruff, 11 Ohio St., 120, it is said that, “where a grantee of an estate in fee simple, with warranty, is evicted by paramount title, of his entire estate, the rule of damages is settled in Ohio to be the *74 amount of the original purchase nnney, with interest, not, however, to exceed the time limited by statute for the recovery of mesne profits from the time of eviction. So, if he be evicted of a definite portion of the premises, the damages are a proportional amount of the purchase money with like interest. King v. Kerr's Adm’r, 5 Ohio, 154; Foote v. Burnet, 10 Ohio, 317 ; Adm'rs of Backus v. McCoy, 3 Ohio, 211; Clarke v. Parr, 14 Ohio, 118; In analogy to this rule it has been held, that the rents reserved in a lease, where no other consideration is paid, must be regarded as a just equivalent for the use of the demised premises. The parties have agreed to so consider it. In case of eviction the rent ceases; and the lessee is relieved from a burden which must be deemed equal to the benefit which he would have derived from the continued enjoyment of the property. ’ ’ But, where a further consideration has been paid, in addition to the rent reserved, its amount or value may be recovered. In the case of Lock v. Furze, 19 C. B. (N. S.), 96, where a tenant in possession had, in consideration of a premium of £400, obtained from the landlord a second lease, to commence when the old lease should expire, but before this timearrived the lessor died, and, it being discovered that the second lease was an excessive execution of a power, the lessee, upon being notified that it would not be recognized by the parties in interest, secured the premises at a much higher rent, and then sued on the covenant for quiet enjoyment contained in the lease, the court held, “that the measure of damages was, beside the£400 premium paid and the- costs of preparing the void lease, the difference in value, as estimated by the jury upon the evidence, between the term professed to be *75 granted to the plaintiff by his lessor and the seven years’ term which he obtained from the reversioners — in other words, the value of the term he had lost.” This decision was, on appeal, affirmed in Exchequer Chamber, and wás followed in the later case in the court of Exchequer of Rolph v. Crouch, L. R., 3 Ech., 44; and the rule it announces, it is said, prevails generally in this country. Taylor on Landlord and Tenant, section 317. At all events, in such cases the measure of damages is not less than the amount of the consideration paid, with the interest; and the trial court was not in error, we think, in applying that rule to the plaintiff’s action,
But, it is claimed, that though the. circuit court erred in reversing the judgment for the reasons stated by it, there were other sufficient grounds for the reversal, and if a correct judgment was rendered it should be affirmed, notwithstanding it is based upon indefensible-grounds. We have examined the other grounds pointed out by counsel, and already considered most of them, and have not discovered any substantial error of law sufficient to warrant the judgment of reversal by the circuit court. The defendant Fertig, was not a real party united in interest with the plaintiff, although he was supposed to be when the petition was filed. He paid no part of the consideration for the assigned lease, and was bound to pay none; he was not an actual, but a mere nominal party to the purchase, and never acquired any interest in the lease, his conduct, and that of the defendants in the use they made of him, was a palpable fraud on the plaintiff who paid all the'consideration money that was ever paid for the lease, and, upon the facts developed on the trial, had the same right to recover as if he *76 had been the only party concerned in the purchase of the lease, as in reality he was ; Fertig’s role of purchaser, assumed by the connivance of the defendants being a mere sham and subterfuge to entrap the plaintiff. It is also claimed by counsel for the defendants in error, that, as their motion for a new trial included the ground that the verdict was against the weight of the evidence, the circuit court might have reversed the judgment on that ground, and this court should affirm because it is not required to examine the evidence to ascertain whether the circuit court misjudged its weight. True, the circuit court might have reversed upon the ground stated, but it appears from the record they did not do so. The statute, section 6709, of the Revised Statutes, requires that court, when it reverses a judgment, to “state the errors found in the record upon which the judgment of reversal is based.” It will be presumed that court performed its duty, and has stated all such errors, as the statute requires; and, therefore, that the court found no errors which are not so stated. According- to the practice adopted by this court, it will not reverse a judgment of reversal either, (1), where it is expressly stated that the reversal was because the verdict or judgment is against the weight of the evidence; or, (2), where the judgment of reversal is general, no grounds being stated, and the record shows the weight of the evidence was property before the court for review; or, (3), where the reversal is upon the ground that a motion for a new trial, alleging that the verdict was against the weight of the evidence, should have been' sustained, unless, in case of the latter class, it appears that the judgment was reversed upon grounds other than *77 the weight of the evidence. But where the grounds of reversal are specifically stated, the court will treat those as the only ones upon which the judgment was reversed, though it be not stated that no other errors were found in the record. In this case the record shows the grounds of reversal to be the alleged errors referred to, in excluding the evidence, and in the charge of the court on the measure of damages. We assume, therefore, that the circuit court did not feel warranted in reversing on the weight of the evidence, and accept it, without examination, as sufficient to support the verdict.
The judgment of the circuit court will he reversed, and that of the common pleas affirmed.